IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE CLASSEN                    :            CIVIL ACTION
                                :
     v.                         :
                                :
MICHAEL NUTTER, et al.          :            NO. 15-4078

MEMORANDUM

Bartle, J.                                   December 4, 2017

　　　　Plaintiff Jose Classen was an inmate in the
Philadelphia prison system at the time this action was filed.
He has sued defendants the City of Philadelphia, Aramark
Corporation,[1] Corizon Health, and several Philadelphia prison
officials.[2]  Classen brings this civil rights action under
42 U.S.C. § 1983 against parties responsible for providing and
maintaining prison conditions at the Philadelphia correctional

---

1.  The amended complaint, filed on September 30, 2016,
identifies Aramark as "Aramark Corporation."  However in its
motion Aramark states that it is correctly identified as
"Aramark Correctional Services, LLC."

2.  The prison officials named in the amended complaint are
former Chief Commissioner of the Philadelphia Prison System
Louis Giorla, temporary acting Prison Commissioner Michael R.
Resnick, Chief Prison Commissioner Blanche Carney, and Deputy
Commissioner of Operations Karen Bryant.  Classen's original
complaint also named former Philadelphia Mayor Michael Nutter,
Warden Michelle Farrell, Warden Major Edward Miranda, Warden
John P. Delaney, and Warden Frederick Abello.  Mayor Nutter was
not named in the amended complaint.  Prior to the filing of this
motion, the parties stipulated to the withdrawal of all claims
in the amended complaint against Farrell, Miranda, Delaney, and
Abello.

facilities where he was housed.  He also alleges several supplemental state common law tort claims.

Before the court are the three motions of the City of Philadephia and the prison officials, Aramark Corporation, and Corizon Health, respectively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See id. at 252.  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II

The following facts are not in dispute or are viewed in the light most favorable to Classen, the nonmoving party. Classen was incarcerated in the Philadelphia Prison System from

December 28, 2014 until October 18, 2016. Specifically, he was an inmate at Curran-Fromhold Correctional Facility ("CFCF") from December 2014 until August 2015 and at the Philadelphia House of Correction ("PHOC") from August 2015 until June 2016. From June 2016 until his release in October 2016 he was housed at the Philadelphia Industrial Correctional Center ("PICC").

Classen first focuses on the conditions of his cell while in confinement, particularly his three-person cell while he was he was in PHOC. At PHOC he and other inmates were often housed in three-person cells in which two inmates slept on a bunkbed and one slept on a cot (referred to as a "boat" by the inmates). According to Classen, there was a maximum of thirty consecutive days that an inmate was permitted to be housed in a three-person cell, but that he was housed in a three-person cell for forty-five days at a time, or four to six months out of the ten months that he was at PHOC. There is no evidence that Classen ever complained, formally or informally, about the three-person cells.

While Classen was in CFCF, from December 2014 to August 2015, and in PICC, from June 2016 to October 2016, the time that he and other inmates were permitted out of their cells was restricted. At CFCF, Classen was allowed out of his individual cell once per day for two hours at a time where he understood that it was the policy to permit an inmate out of his

-3-

cell three times per day.  Excluding meal times and Medical
visits, he was generally released from his cell at PICC only
once per day for three to four hours.  Again, there is no
evidence that Classen grieved this complaint either informally
or formally.

Classen also criticizes the sanitation of the
kitchens, particularly the kitchen in PHOC where he was housed
from August 2015 through June 2016.  Defendant Aramark, a
private corporation headquartered in Philadelphia, provides food
preparation services to all three correctional facilities.[3]  All
meals are prepared by Aramark at CFCF and then distributed at
CFCF, PHOC, and PICC for consumption.  At CFCF and PICC, meals
are brought from the kitchen to cell blocks for meal time.  At
PHOC, inmates leave their cell blocks to eat in the community
mess hall.  At the mess hall they are given trays and stand in
line to receive food from Aramark employees through a window
that divides the kitchen from the mess hall.  Hot food is
brought from the kitchen to the cell blocks.

Classen testified that he often observed mice running
around on the ground during meal time at PHOC.  According to
him, the kitchen was "filthy" and looking through the window

_____

3.  The amended complaint does not describe the nature of the
relationship between the correctional facilities other than
describing Aramark as a "foodservice provider to clients
including correctional facilities[.]"

into the kitchen he frequently observed mice and roaches running on the floors and over utensils and cutlery as well as dust and debris on the utensils and trays. He spoke with individuals from the kitchen on two separate occasions about the conditions he saw in the kitchen.

Classen recounted that in 2016, while in PHOC, he found a nut in his Aramark-prepared lunch meal. He reported this to a corrections officer working in the mess hall at the time. She told him she would photograph the meal, but Classen does not believe that she did so. He testified that biting down on this nut caused him to chip his front tooth, although he did not realize that his tooth had been chipped until the following day. He admitted that he did not report this incident to a dentist or Medical at PHOC but stated that he filled out a Grievance Form related to this incident.

On April 27, 2016 at lunch time while in PHOC, Classen was eating a prepared meal when he soon realized the meal contained mouse feces. He immediately became nauseous and vomited. Classen reported the incident to a corrections officer who was working in the mess hall at the time. The officer told Classen that he would photograph the meal, but again Classen does not think that he did so. Classen immediately visited Medical following the incident and receive medication. Classen

continued to vomit and have an upset stomach that day and for a number of days thereafter.

In addition to the conditions of the kitchen, Classen also objects to the general sanitation conditions of the prisons. He found mold in most, if not all, of the showers in CFCF and PICC. Additionally, the plumbing of PHOC presented a safety hazard to Classen. Pipes were exposed and leaking. Classen and the inmates often placed buckets on the floor around PHOC to collect water leaking from pipes in the ceiling. Classen does not state whether he filed a formal or informal grievance on these issues.

On May 20, 2016 in PHOC Classen slipped and fell as a result of water on the ground that was leaking from exposed pipes while he was attempting to change the channel on the television in the community area of the cell block. He twisted his ankle as a result of the fall.

After Classen slipped on the floor, inmates alerted correctional officers of his fall, and he was taken to Medical on a stretcher where he was seen by defendant Corizon Health, which is a private entity contracted by the Philadelphia prison system to provide medical services to inmates, including Classen.[4] At this initial visit he was prescribed medication and

_____

4. Prior to his incarceration, Classen had suffered from a gunshot wound in his left foot and thereafter underwent multiple

scheduled to be transported to CFCF for an x-ray.  That day, an order was placed by Corizon Health physician Dr. James Arnone for a prescription for Classen for a muscle relaxant.  The order also instructed that Plaintiff was to have "RICE" treatment: "rest, ice, compression, elevation."

The following day, May 21, 2016, Classen had an x-ray of his left foot.  The impression of the x-ray stated: "Acute nondisplaced fracture base of 5th metatarsal for which fat [sic] is advised to assess the healing process[.]  Metallic orthopedic instrumentation transfixing the interphalangeal joint of the great toe[.]"

On May 24, 2016 Classen returned to Medical at PHOC. He was diagnosed with a fracture of his left foot in accordance with the x-ray report.  The report also stated that Classen "admits to work yesterday and today," that "[a]dditional support provided at this time, counselled on bed rest except for food, medicine and bathroom . . . [n]o work for 4 weeks (minimum) until cleared," and that "closed fracture of unspecified bone(s) of foot (except toes)."  Classen was prescribed medication for fifteen days and referred to "Podiatry – Surgical Chiropody (Pending Approval)" at the Rothman Institute for "possible immobilization/need for surgery."

surgeries.  He had one screw and four pins in his left foot prior to the first day of his incarceration.

On May 26, 2016 Classen filled out a Sick Call Request complaining that the medication he was receiving was insufficient to control his pain. The next day Classen reported in the morning to Medical at PHOC complaining about bruising in his left foot and ankle. He was examined by a nurse and an ace bandage was applied to his left foot. He was instructed to continue taking his medication. Later that day on May 27, 2016 he filled out a Sick Call Request. He stated that he reported to Medical and complained of bruising, "but they never told me wat [sic] was wrong or what to do. I need a medical staff to arrange for me to be seen." On the same Sick Call Request form, he requested a response in writing to his previous Sick Call Request of May 26, 2016. Additionally, he wrote "I was also called to sick call today 5-27-16 and the medical staff . . . sent me back to my housing unit without seeing me, and I was told that I will be called down again on the weekend. I have a broken bone and need medical care." In response on May 30, 2016, ten days after his slip and fall, on the Sick Call Request form a nurse wrote: "Written Response[.] You have a referral to see podiatry. Please be patient as you will be called."

On June 7, 2016 a Consultation Request and Hospital Transfer Form was completed. Classen was seen by Dr. Taweel, an offsite orthopedic surgeon affiliated with the Rothman Institute. A boot was placed on his left foot and was to be

worn for six weeks.  He was scheduled for another appointment on July 19, 2016.  Following the June 7 appointment he was seen at Medical at PHOC and examined again by a nurse who referred him to Corizon Health's physician, Dr. Arnone.  Dr. Arnone entered orders for a follow-up appointment in six weeks with Dr. Taweel as previously prescribed.

Classen was again seen by Dr. Arnone at PHOC the next day, June 8, 2016.  The report noted that the walking boot was placed on Classen the day before at the offsite clinic.  It further provided: "Pt states he was told bone gap widened to 3.1mm (probably secondary to insistence on working right after injury occurred, pt was eventually fired from job). . . . Plan is to have walking boot in place for 6 wks [sic] and reevaluate at that time."  He was prescribed medication.

In June 2016 Classen was moved from PHOC to PICC.  On June 20, 2016 Classen was seen by Medical at PICC.  He complained that the medication was not helping his pain and requested stronger medication.  The progress report completed by a physician's assistant stated that the issue was addressed by Dr. Arnone in prior visit and that Classen was "good until 08/08/2016[.]"

On June 24, 2016 Classen completed a Sick Call Request requesting a resolution to his complaints.  He also wrote: "I have to be going up and down the steps in here and my foot is in

a lot of pain. I don't want my leg to go out on me do [sic] to the pain and I fall down the stairs.  Please give me a response."

A progress note was entered later that day by the physician's assistant.  The report states that Classen "agrees to take [medication] as ordered by [doctor] on 06/08/2016 for another week[.]"  The physician's assistant referred him to surgical chiropody and counseled Classen on the side effects of strong medications.

Also on that day, June 24, 2016, Classen filled out a Philadelphia prison system Inmate Grievance Form relating to medical services and submitted the form the following day. Classen detailed the history of breaking his foot while in PHOC and being given a walking boot and x-ray.  He wrote that while he was instructed to stay off of his broken foot, he was not able to "because this is not a medical block."  He complained that his medication was not working and that he had reported this numerous times.  In response, factual findings were documented by PICC on June 28, 2016.  The factual findings stated: "Inmate states that he is in a lot of pain with his foot that the medication is not working.  Mr. Classen has seen the mid-level provider on 6/26/16.  He indicated to the PA that he wants a narotic [sic].  PA educated him he is not in need of a narcotic medication.  Mr. Classen agree [sic] to take his

[medication] as ordered on 6/8/16." In the City's file relating to this Grievance, it marks the issue as "resolved."

On July 9, 2016 Classen filled out a Sick Call Request form. He stated that he was taken off of his medication and that he was still in pain. On July 19, 2016 Classen was seen by Dr. Taweel of the Rothman Institute for a previously-scheduled follow-up podiatry appointment. Notes from the appointment state that his foot was "partially healed" and instructed that he was to continue to wear the walking boot for four weeks and limit activity. Classen was evaluated by Medical at PICC upon his return.

On July 20, 2016, Siddharth Sagreiya, M.D. completed a progress note. Classen reported that he was "o.k." and the report noted a "status post-left fifth metatarsal fracture." The order instructed that chronic clinic care was to be discontinued and a follow-up orthopedist appointment was to be scheduled.

The next month, on August 17, 2016, Classen completed a Sick Call Request. He wrote: "I wanna [sic] know what's going on with my trip to take this boot off my foot." Two days later, an individual from Medical wrote on this Sick Call Request that an orthopedics appointment for Classen was pending approval.

On August 23, 2016 Classen returned to Dr. Taweel for a follow-up appointment. Notes from the appointment state that

Classen's fractured left fifth metatarsal bone was "clinically healed" and no further treatment was needed. The walking boot was taken off on this date. He was also seen by a nurse at PICC Medical later that day. Her notes state that no further prescription was needed.

On September 1, 2016 Classen completed a Sick Call Request and asked that he be moved from the top bunk bed to the bottom bunk bed. He wrote: "Right now I'm on the top bed and it's killing me to get up and down when I just got off the boot. I need a bottom bed pass please." He was seen by Medical four days later for this request. The notes of the physician's assistant from the visit reveal "I/M is already on a lower bunk."

On October 18, 2016, after Classen filed his amended complaint, he was freed from custody.

### III

In Count One Classen avers civil rights violations against the City, the prison officials, and Corizon Health under 42 U.S.C. § 1983 based upon violations of his rights under the Fifth and Fourteen Amendments of the United States Constitution.[5] He pleads negligent infliction of emotional distress and intentional infliction of emotional distress against Corizon

_____

5. Count One was pleaded against all defendants. This claim against Aramark was dismissed by the court on April 28, 2017 upon Aramark's motion to dismiss under Rule 12(b)(6).

Health in Counts Two and Three, respectively.[6]  In Count Four against the City, the prison officials, and Corizon Health Classen brings a claim of declaratory relief for unconstitutional conditions of confinement under the Eighth Amendment in violation of 42 U.S.C. § 1983.[7]  Count Five alleges a claim against the City, the prison officials, and Corizon Health for injunctive relief for unconstitutional conditions of confinement under the Eighth Amendment in violation of 42 U.S.C. § 1983.[8]  Finally, Classen alleges state law negligence against Aramark and Corizon Health in Count Six.[9]

IV

We first turn to the motion of the City of Philadelphia and the prison officials for summary judgment on the claims alleging violations of 42 U.S.C. § 1983 in Counts One and Four.  Classen alleges in Count One that he has been

---

6.  Counts Two and Three were pleaded against all defendants. The parties stipulated on October 26, 2016 to the dismissal of these claims against the City and Giorla, Resnick, Carney, and Bryant.  The claims against Aramark were dismissed by agreement on April 28, 2017.

7.  This claim in Count Four against Aramark was dismissed by agreement on April 28, 2017.

8.  Count Five against Aramark was dismissed by agreement on April 28, 2017.

9.  The parties stipulated on October 26, 2016 to the dismissal of Count Six against the City and Giorla, Resnick, Carney, and Bryant.

deprived of the "equal protection of the laws and rights guaranteed by the Constitution, in particular the Fifth and Fourteenth Amendments thereof, in violation of 42 U.S.C. § 1983: his right to be secure in his person and property; his right to be free from cruel and unusual punishment; his right to adequate medical treatment in prison; and his right to due process of law, all to his great detriment and loss." He alleges that practices and/or customs in the Philadelphia prison system caused this violation of rights. In Count Four, he alleges that he has been deprived of adequate medical care and treatment, unsanitary food conditions, overcrowded living conditions, and defective plumbing, among other conditions, as provided under the Eighth Amendment, in violation of § 1983.

As an initial matter, the City and the prison officials maintain that the court should treat the City and the prison officials similarly in analyzing the claims against them since "[a] suit against a government official in his or her official capacity is treated as a suit against the governmental entity itself." See A.M. ex rel. J.M.K. v. Luzrene Cty. Detentional Ctr., 372 F.3d 572, 580 (3d Cir. 2004). Classen does not dispute this. We will treat the § 1983 claims against the prison officials in their official capacities as § 1983 claims against the City itself. See id. at 580-81.

The City and the prison officials seek summary judgment against Classen on these claims on the ground that Classen, while an inmate housed in a correctional facility, failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires "a prisoner confined in any jail, prison, or other correctional facility" to exhaust all such available administrative remedies prior to the commencement of a lawsuit under § 1983 with respect to prison conditions. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 531 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006).

"Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)). After the party carrying the burden of proof on a particular issue has met its initial burden, the adverse party's response "must support the assertion [that the fact is genuinely disputed] by: . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

The grievance procedures of the Philadelphia prison system are set forth in its Policies & Procedures Inmate Handbook. The handbook provides for three types of inmate grievances - medical, emergency,[10] and standard - and describes the various procedures for each step for the different types of grievances. The City and the prison officials maintain that Classen never filed a grievance about the conditions of confinement that he experienced while in the Philadelphia prison system. They rely on the affidavit of Deputy Warden Patricia Powers, which states, "Documentation showing all the grievances filed by Mr. Classen is attached to this affidavit." The affidavit goes on to state, in relevant part, "Mr. Classen never filed a grievance about his conditions of confinement or being housed in a three-person cell."

His grievance file includes a total of six grievances. Each of them includes: his name; the dates the grievance was submitted, logged, occurred, and processed; the identity of the Philadelphia prison facility; the type of grievance; the name of the person who processed the grievance; and a summary of the grievance. The file contains one medical grievance filed by Classen at PICC that was submitted on June 27, 2016 and

_____

10. An emergency grievance concerns issues of threat of death or injury, disruption of the facility, or circumstances endangering the health or safety of an inmate or staff. Classen does not raise any issue falling into this category.

processed on June 28, 2016. The summary of the grievance provides, "Inmate states that he is in alot [sic] of pain with his foot that the medication is not working." The entry notes that the grievance status is "resolved." The other five grievances in the file are: one grievance related to the treatment of Classen by a corrections officer while being searched by the corrections officer; two grievances for not receiving compensation for his work; one complaint regarding the need for a job; and one grievance related to not receiving his mail.

The defendants are correct that none of the grievances in his file references the conditions of food, the conditions of the plumbing or pipes, or housing or assignment to temporary beds in any of the prison facilities. Classen does not challenge the completeness of the grievance file produced by the City and prison officials.

Although Classen filed a medical grievance regarding the pain in his foot, the City and the officials have provided unrebutted evidence that the grievance was resolved. There is no indication that the grievance was appealed to higher levels as required for any determination adverse to Classen. With respect to Classen's testimony that he filed a grievance relating to biting down on a nut and chipping his tooth, there is also no evidence in the record that this grievance was

exhausted.  In sum, the City and the prison officials have come forward with undisputed facts that Classen has failed to exhaust his claims administratively, and in the case of his foot pain, that his grievance was resolved administratively.

Accordingly, the motion of the City and the prison officials Louis Giorla, Michael R. Resnick, Blanche Carney, and Karen Bryant for summary judgment on Counts One and Four will be granted.[11]

V

We now consider the motion of Corizon Health for summary judgment.  In Count One Classen avers under § 1983 he has been deprived of equal protection of the laws and rights guaranteed by the Fifth and Fourteenth Amendments.[12]  In Count Four he alleges under § 1983 that he has been subjected to unconstitutional conditions of confinement, specifically

_____

11.  Classen has not disputed the City's argument nor has he challenged his grievance file.  Instead Classen maintains that he has adequately stated a claim for relief under Monell v. Department of Social Services, 436 U.S. 658 (1978).  He submits that the City has not responded to his request for production of discovery, which he contends will result in evidence in support of his claims.  We do not have to reach Classen's argument under Monell since he did not exhaust his remedies administratively, the threshold requirement under the PLRA, 42 U.S.C. § 1997e(a).  See Porter, 534 U.S. at 531.  We also note that Classen did not file any motion protesting the City's response to his request(s) for discovery.  Classen also did not request any extension of discovery deadlines set forth in the relevant scheduling order.

12.  Classen does not raise a procedural due process claim under the Fourteenth Amendment.

inadequate medical care, in violation of the Eighth Amendment.
His claims in Counts One and Four are essentially the same.

"Where a particular [constitutional] Amendment
'provides an explicit textual source of constitutional
protection' against a particular sort of government behavior,
'that Amendment, not the more generalized notion of substantive
due process, must be the guide for analyzing these claims.'"
Albright v. Oliver, 510 U.S. 266, 274 (1994) (quoting Graham v.
Connor, 490 U.S. 386, 395 (1989)) (internal quotation omitted).
Thus we evaluate Classen's claim for inadequate medical care in
Counts One and Four not under substantive due process but under
the more specific Eighth Amendment standards set forth in
Estelle v. Gamble, 429 U.S. 97, 104 (1976).  See Natale v.
Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003);
see also Whitley v. Albers, 475 U.S. 312, 327 (1986).

Corizon Health does not argue failure to exhaust
administrative remedies.  Thus we must consider the merit of
Classen's claims and determine whether any genuine dispute of
material fact exists.

According to Corizon Health, the facts cannot
establish that Classen's constitutional right to medical care
under the Eighth Amendment, as alleged in Count Four, has been
infringed.  Corizon Health maintains that Classen has not

-19-

suffered a serious medical need and that the acts or omissions of Corizon Health do not amount to deliberate indifference.

The Eighth Amendment, which is made applicable to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. "[D]eliberate indifference to serious medical needs of prisoners" constitutes a violation of that constitutional proscription. Estelle, 429 U.S. at 104. To establish a violation of his constitutional right to adequate medical care, the plaintiff must demonstrate: (1) a serious medical need; and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Natale, 318 F.3d at 582. Negligence on the part of the health care provider is not sufficient to impose liability under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 835–36 (1994).

Corizon Health first argues that Classen's medical condition of the broken bone in his foot does not constitute a serious medical need.[13] The Supreme Court has recognized that to have a "serious medical need" the inmate need not suffer "physical 'torture or a lingering death.'" Estelle, 429 U.S. at 103 (quoting In re Kemmler, 136 U.S. 446, 447 (1890)). The inmate's condition must be such that the "failure to treat can

_____

13. We note that Corizon Health does not argue failure to exhaust administrative remedies.

be expected to lead to substantial and unnecessary suffering, injury, or death." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Moreover, it must be a condition that "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id.; see also Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

Classen's condition of a broken bone in his foot fits the definition of a serious medical need. It was diagnosed by a physician. The failure to treat a broken bone in the foot would likely lead to more, unnecessary suffering. See Colburn, 946 F.2d at 1023. Thus Corizon Health's argument on the question of serious medical need falls short.

Corizon Health further argues that the undisputed facts do not amount to deliberate indifference by it in violation of the Eighth Amendment. Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104–05. This is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). It requires that the defendant "knows of and disregards

an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837.

Classen maintains that the eighteen-day wait between May 20, 2016, the date that he slipped on the wet floor and fell and June 7, 2016, the date that he saw a physician who prescribed a walking boot for him, constitutes deliberate indifference. According to Classen, Corizon Health knew of Classen's immediate need for treatment and disregarded this need.

Based on the record before us, the acts or omissions of Corizon cannot rise to the level of deliberate indifference. Classen was immediately treated by Medical in the prison following his fall on the wet floor. According to the medical records, he was administered an x-ray the day after he fell. Within three days of the x-ray, he was referred to "Podiatry – Surgical Chiropody (Pending Approval)" at the Rothman Institute, an offsite location. He was also given instructions to rest and seven days after the incident was given an ace bandage for his foot. In his deposition, Classen acknowledges that he was treated and given instructions to keep off of his foot, though he does not recall the date of the x-ray. He testified that the medication that was given to him by Medical was insufficient to alleviate his pain. However, this does not rise to the level of deliberate indifference.

Each time he went to Medical in the prisons he was treated.
This attentive treatment by Medical cannot be described as
"know[ng] of and disregard[ing] . . . excessive risk to inmate
health" such that this conduct rises to deliberate indifference.
Farmer, 511 U.S. at 837.

Classen focuses on the failure to see a physician and
receive a walking boot sooner than what occurred here
constitutes deliberate indifference.  We disagree.  As stated,
Classen was treated each time he visited Medical, and he
received an ace bandage on May 27, 2016, seven days after his
slip and fall.  He first saw a Corizon Health physician on
May 24, 2016.  Although he did not obtain a walking boot for
eighteen days, Corizon Health referred him to the Rothman
Institute, as noted above, within three days after his x-ray.
Classen does not point to anything to suggest the subsequent
delay in his visit to the Rothman Institute was caused by
Corizon Health.

Corizon Health further maintains that it is entitled
to protection from liability under § 1983 pursuant to Monell v.
Department of Social Services of the City of New York, 436 U.S.
658 (1978). Under Monell, a municipality cannot be held
vicariously liable on a theory of respondeat superior for the
constitutional torts of its employees.  Id. at 691.  However, a
municipality may be held liable under § 1983 if action was taken

pursuant to an official policy or custom of the municipality. Id.; see also Connick v. Thompson, 563 U.S. 51, 60 (2011).

Under the Monell line of jurisprudence, a private corporation contracted by a municipality to provide inmate healthcare, as occurred here, is treated like the municipality and cannot be held liable under § 1983 on a theory of respondeat superior. Liability is limited to a situation where a policy or custom of the corporation is implicated. Natale, 318 F.3d at 583-84; Weigher v. Prison Health Servs., 402 F. App'x 668, 669-70 (3d Cir. 2010); Gannaway v. Prime Care Med., Inc., 150 F. Supp. 3d 511, 530 (E.D. Pa. 2015); Jefferson v. Husain, 2016 WL 1255731 at *13 (E.D. Pa. Mar. 31, 2016).

There is no dispute that Corizon Health is a private corporation contracted by the Philadelphia prison system. Classen does not challenge that Corizon Health is entitled to protection from liability under § 1983 pursuant to Monell. He does not cite to any evidence on the record of a policy or custom of Corizon Health of deliberate indifference.[14]

---

14. Rather than citing to evidence of a policy or custom of deliberate indifference on the part of Corizon Health, Classen simply states that he served discovery on Corizon Health but has not received any response. The discovery deadline set forth in the Second Scheduling Order was September 29, 2017. Classen did not file any motion requesting an extension of this deadline or any motion requesting the court to compel Corizon Health to produce discovery.

For the reasons we have discussed, the motion of
Corizon Health for summary judgment with respect to Classen's
claims in Count One under § 1983 for violation of the Fifth and
Fourteenth Amendments and in Count Four under § 1983 for
violation of the Eighth Amendment will be granted.

Corizon Health also moves for summary judgment with
respect to Classen's state law claim of negligent infliction of
emotion distress, alleged in Count Two.[15]  In Pennsylvania, the
cause of action of negligent infliction of emotional distress is
limited to four factual scenarios:  (1) where the defendant had
a contractual or fiduciary duty toward the plaintiff; (2) where
the plaintiff was subjected to a physical impact; (3) where the
plaintiff was in a zone of danger, thereby reasonably
experiencing fear of impending physical injury; or (4) whether
the plaintiff observed a tortious injury to a close relative.
Doe v. Philadelphia Comm. Health Alts. AIDS Task Force, 745 A.2d
25, 26 (Pa. Super. 2000); Toney v. Chester Cty. Hosp., 36 A.3d
83, 95 (Pa. 2011); Davis v. Corizon Health, Inc., 2015 WL 518263
at *9 (E.D. Pa. Feb. 9, 2015).  Corizon Health admits that this

---

15.  Alternatively, Corizon Health maintains that it cannot be
held liable for the common law torts of negligent infliction of
emotional distress, intentional infliction of emotional
distress, and negligence ground that a private corporation
providing medical care in prisons is not liable under Monell.
436 U.S. 658 at 690-92.  The Monell framework is only applicable
to claims of constitutional infringement brought under § 1983,
thus it is inapposite.  Beck v. City of Pittsburgh, 89 F.3d 966,
971 (3d Cir. 1996).

matter falls within the first scenario.  It acknowledges that it had a contractual duty toward plaintiff to provide adequate medical care.  Under Pennsylvania law this relationship encompasses "an implied duty of care for the plaintiff's emotional well-being."  Toney, 36 A.3d at 95.

A claim of negligent infliction of emotional distress requires a plaintiff to demonstrate that the "[d]efendant owed a duty of care to the plaintiff, the defendant breached that duty of care, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage."  Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 217 (Pa. Super. 2012); see also Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003).  The plaintiff must suffer compensable emotional harm as a result of the breach of duty by the defendant.  Toney, 36 A.2d at 95.  That is, the breach of duty must result in severe emotional distress to the plaintiff.  Id.  The Pennsylvania Supreme Court has defined this harm as harm that is "likely to be experienced as a visceral and devastating assault on the self such that it resemble[s] physical agony in its brutality."  Id. (internal citations and quotations omitted).

Classen maintains that Corizon Health's failure to have him seen by a physician and given a walking boot for eighteen days constitutes negligence.  Even if he is correct, he has not pointed to facts demonstrating that he has suffered

severe emotional distress as a result of any breach of duty by Corizon Health.  The record is devoid of evidence upon which a factfinder could rely in finding in favor of Classen on this claim.

Accordingly, the motion for summary judgment of Corizon Health on the claim of negligent infliction of emotional distress in Count Two will be granted.

Corizon Health in addition moves for summary judgment with respect to Classen's state law claim alleged in Count Three of intentional infliction of emotional distress.  This tort requires, <u>inter alia</u>, intentional, extreme, and outrageous conduct on the part of the tortfeasor, which causes severe emotional distress to the plaintiff.  <u>Weiley</u>, 51 A.3d at 216.

Classen asserts that "[a] genuine issue of material fact exists regarding [his] emotional distress claims."  Once again, he has not identified any "intentional, extreme, and outrageous" conduct by Corizon Health that has caused him severe emotional distress.

Thus we will grant the motion of Corizon Health for summary judgment on Count Three.

Finally, Corizon Health argues that it is entitled to summary judgment on the claim of negligence alleged in Count Six since Classen has not identified facts that can demonstrate that

Corizon Health was negligent.[16]  According to Classen, Corizon

Health was negligent in not immobilizing his foot with a walking

boot for a period of eighteen days between his fall and his

podiatry appointment where he received the walking boot.  He

contends that he suffered extreme pain during this time as a

result of walking on his fractured foot.

     As we have explained, in order for Classen's state law

claim of negligence to proceed, he must be able to demonstrate

that the "[d]efendant owed a duty of care to the plaintiff, the

defendant breached that duty of care, the breach resulted in

injury to the plaintiff, and the plaintiff suffered an actual

loss or damage."  Weiley, 51 A.3d at 217; see also Phillips, 841

A.2d at 1008.  We review the facts previously stated above in

the light most favorable to the plaintiff.  Classen slipped,

fell, and twisted his foot in PHOC on May 20, 2016.  Eighteen

days later, on June 7, 2016, he was seen by a physician

affiliated with the Rothman Institute for a "Podiatry - Surgical

Chiropody" appointment.  At this appointment he was given a

walking boot to be worn for six weeks and scheduled for a

follow-up appointment.  Later that same day he was seen by a

_____

16.  Although Corizon Health argues that the facts cannot
demonstrate the existence of a duty of care owed by it to
Classen, Corizon Health has admitted in its brief that with
respect to Classen's claim for negligent infliction of emotional
distress against Corizon Health, it had a contractual duty to
provide adequate medical care to inmates such as Classen.

Corizon Health nurse at PHOC Medical, who referred him to a Corizon Health physician. The physician entered the orders for Classen's follow-up appointment six weeks later.

Between Classen's slip and fall and his appointment at the Rothman Institute where he received the walking boot, he was treated by Medical at PHOC three times. The first time was on the date of the fall, May 20. Immediately after the fall he was taken on a stretcher to Medical. There he was prescribed medication and scheduled to be transported to CFCF for an x-ray, which took place the next day. He was given instructions for rest, ice, compression, and elevation.

The second time that he was treated by Medical between the date of his fall, May 20, and the date he received the walking boot, June 7, was on May 24, 2016, three days after he had undergone an x-ray at CFCF. At the May 24 appointment he was diagnosed by a Corizon Health physician with a fracture of unspecified bones of his left foot. He was instructed to rest and not work for a minimum of four weeks. He was prescribed medication by a physician and scheduled for an appointment concerning his foot and possible surgery with a physician from the Rothman Institute, a separate entity from Corizon Health.

Classen was seen once more by Medical prior to his June 7 appointment when he received the walking boot. On May 27, 2016 Classen reported to Medical at PHOC complaining of

pain and bruising in his ankle and foot.  He was examined by a
nurse who applied an ace bandage to his foot.  The nurse
instructed him to continue taking his medication.  Classen also
filled out a Sick Call Request Form on that day.  A May 30, 2016
written statement from a nurse noted on that Sick Call Request
Form, "You have a referral to see podiatry.  Please be patient
as you will be called."

Classen, as noted above, was referred by Corizon
Health on May 24, 2016 to the Rothman Institute for an
appointment.  At that appointment, which occurred on June 7,
2016, Classen received the walking boot.  Significantly, the
record is silent as to whether the delay between May 24 and
June 7 was caused by Corizon Health, by scheduling issues at the
Rothman Institute, by the prison authorities, or by some other
reason.  Thus any delay after May 24 cannot be attributable to
Corizon Health.

The record establishes without dispute that Corizon
Health owed a duty of care to provide adequate medical treatment
to Classen.  However, the facts before the court, taken in the
light most favorable to Classen, are insufficient to establish a
breach of that duty of care by Corizon Health.  No reasonable
factfinder could find in favor of Classen on his claim of
negligence against Corizon Health for not giving him a walking
boot sooner than eighteen days after his fall, particularly

since Corizon Health had referred him to the Rothman Institute for follow-up care on May 24, only four days after he fell and three days after he was x-rayed.

Accordingly, the motion of Corizon Health for summary judgment on Classen's claim of negligence in Count Six will be granted.

VI

We turn to Classen's allegations under 42 U.S.C. § 1983 in Count Five in which he seeks injunctive relief against the City of Philadelphia, the prison officials, and Corizon Health for unconstitutional conditions of confinement in violation of the Eighth Amendment, as incorporated by the Fourteenth Amendment. As Classen is no longer an inmate in the Philadelphia prison system and he does not allege or produce evidence that he will return, his claim for injunctive relief against the City of Philadelphia, the prison officials, and Corizon Health is moot. See Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1998); see also Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993).

Count Five will be dismissed.

VII

Finally, Aramark has moved for summary judgment on Count Six on the ground that Classen has not adduced sufficient evidence to raise a genuine dispute of material fact on his

claim of common law negligence.  Aramark, like Corizon Health, does not raise the issue of exhaustion of administrative remedies.

Classen testified that he saw mice in the kitchen of PHOC, reported this to kitchen personnel, bit down on a nut in his food, and possibly ingested mice feces that was in his food.[17]  Based on the record before the court and drawing all inferences in favor of the nonmoving party Classen, we conclude that the testimony of Classen is sufficient to raise a genuine dispute of material facts with respect to his claim that Aramark was negligent.  Accordingly, the motion of Aramark for summary judgment on Count Six will be denied.

---

17.  Classen further relies on a health code violation report of the Philadelphia Health Department that stated, in relevant part, "[f]resh mouse droppings were observed on the floor services in the dining area and food service area."  Aramark responded in its untimely reply brief that the report presents an incomplete picture of the health code reports by the Philadelphia Health Department, and Aramark included more reports it contended were relevant.  It is unclear whether the reports supplied to the court are inclusive of all reports that are relevant.  We decline to consider these reports.